UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LOWELL FLEET TOWING, INC., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> EMPLOYERS MUTUAL CASUALTY ) <br> COMPANY, ) <br> ) <br> Defendant. ) | C.A. No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

This is a civil action for declaratory relief pursuant to 28 U.S.C. § 2201, in which the plaintiff, Lowell Fleet Towing, Inc. ("LF Towing"), petitions this Court for declarations of rights and obligations in connection with an insurance policy issued by Employers Mutual Casualty Company ("EMC").

### Parties

1. Plaintiff, LF Towing, is a Massachusetts corporation with a principal place of business in Lowell, Massachusetts.

2. Defendant, EMC, is an Iowa corporation with a principal place of business in Des Moines, Iowa. EMC is registered to do business in Massachusetts.

### Jurisdiction and Venue

3. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it concerns a controversy between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## Facts

### The *Wrongful Death Actions*

6.  Mary Lou Browne-Fekert and James D. Fekert, as Administrators of the Estate of Delanie Caitlin Fekert, and Milan Madani and Binal Madani, as Administrators of the Estate of Urushi Madani, have each filed wrongful death lawsuits against LF Towing that are pending in Massachusetts Superior Court (the "*Wrongful Death Actions*").

7.  The *Wrongful Death Actions* allege that on October 8, 2022, the estates' respective decedents, Delanie Caitlin Fekert and Urushi Madani, perished when a tow truck collided with the back end of an Uber vehicle in which they were riding as passengers on the Zakim Bridge section of Interstate 93 in Boston, Massachusetts.

8.  The tow truck involved in the accident was owned by LF Towing and operated by its employee, George/Rain Childs ("Childs").

9.  The *Wrongful Death Actions* allege that the accident was caused, in part, by Childs' negligent operation of the tow truck in the ordinary course of employment with LF Towing.

10. The *Wrongful Death Actions* further allege that LF Towing is vicariously liable for Childs' alleged negligence.

11. The *Wrongful Death Actions* further allege that the accident was caused, in part, by independent negligence of LF Towing, including: (i) negligent hiring, training, retention,

supervision, and/or management of Childs; and (ii) negligent ownership, control, and/or maintenance of its tow truck (which allegedly had defective brakes at the time of the accident).

### The *Angari Action*

12. The Uber vehicle involved in the accident was operated by Driss Angari ("Mr. Angari").

13. Mr. Angari and his spouse, Hayat Chahbouni ("Ms. Chahbouni"), have filed a tort action against LF Towing that is pending in Massachusetts Superior Court (the "*Angari Action*").

14. The *Angari Action* alleges that Mr. Angari was seriously injured in the accident, and that Ms. Chahbouni has suffered a resulting loss of consortium.

15. The *Angari Action* alleges that the accident was caused, in part, by Childs' negligent operation of the tow truck in the ordinary course of employment with LF Towing.

16. The *Angari Action* further alleges that LF Towing is vicariously liable for Childs' alleged negligence.

17. The *Angari Action* further alleges that the accident was caused, in part, by independent negligence of LF Towing, including: (i) negligent hiring, training, retention, supervision, and/or management of Childs; and (ii) negligent ownership, control, and/or maintenance of its tow truck (which allegedly had defective brakes at the time of the accident).

### The Pilgrim Policy

18. Pilgrim Insurance Company ("Pilgrim") issued a commercial auto policy numbered CSC00001004621 (the "Pilgrim Policy").

19. The Pilgrim Policy includes a "Declarations" form that identifies LF Towing as the "Named Insured" and the "Policy Period" as January 1, 2022, to January 1, 2023.

20. The "Declarations" form also identifies the Pilgrim Policy as providing "Liability Insurance" with a "Combined Single Limit" of "$1,000,000 Each Accident."

21. The "Declarations" form also identifies the tow truck involved in the accident as a "covered auto" under the Pilgrim Policy.

22. Pilgrim has been defending LF Towing (and Childs) against the *Wrongful Death Actions* and the *Angari Action*.

23. As amended by the Massachusetts Mandatory Endorsement, the Pilgrim Policy provides:

> We have the right and duty to defend any "insured" against a "suit" asking for . . . ["bodily injury"] damages . . . even if it is without merit.

> \* \* \*

> Our duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court's permission, the maximum amount of the Liability Coverage Limit of Insurance. We may end our duty to defend at any time during the course of the "suit" by tendering, or paying the maximum amount of the Liability Coverage Limit of Insurance, without the need for a judgment or settlement of the "suit" or a release by the claimant.

24. Upon information and belief, Pilgrim intends, imminently, to terminate its duty to defend LF Towing (and Childs) by tendering or paying its policy limit.

### The EMC Umbrella Policy

25. EMC issued a commercial umbrella policy numbered 5J7-34-55-23 (the "Umbrella Policy").

26. The Umbrella Policy includes a "Declarations" form that identifies LF Maintenance as the "Named Insured" and the policy period as July 30, 2022, through July 30, 2023.

4

27. The "Declarations" form of the Umbrella Policy identifies an "Each Occurrence Limit (Liability Coverage)" of $1,000,000, and an "Aggregate Limit (Liability Coverage) (except with respect to 'covered autos')" of $1,000,000.

28. The Umbrella Policy includes a "Named Insured Endorsement" that identifies LF Towing as a "Named Insured."

29. The Umbrella Policy includes a "Schedule of Underlying Insurance" that identifies a "Commercial Auto Liability" policy (numbered 5Z73455) with a "$1,000,000 Each Accident" liability limit that EMC issued for the policy period of July 30, 2022, to July 30, 2023 (the "EMC Auto Policy").

30. The EMC Auto Policy includes a "Named Insured Endorsement" that identifies LF Towing as a "Named Insured."

31. The Umbrella Policy provides (in relevant part):

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other . . . organization qualifying as a Named Insured under the policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> * * *
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay on behalf of the insured the "ultimate

5

>>net loss" in excess of the "retained limit" because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury . . . when the "underlying insurance" does not provide coverage . . . .

>>\* \* \*

> **b.** This insurance applies to "bodily injury" . . . that is subject to an applicable "retained limit".

>>\* \* \*

> **c.** This insurance applies to "bodily injury" . . . only if:

>> **(1)** The "bodily injury" . . . is caused by an "occurrence" . . . ; [and]

>>>\* \* \*

>> **(3)** The "bodily injury" . . . occurs during the policy period . . . .

>>>\* \* \*

**2.** **Exclusions**

> This insurance does not apply to:

>>\* \* \*

> **f.** **Auto Coverages**

>> **(1)** "Bodily injury" . . . arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto" . . . .

>>>\* \* \*

**SECTION II – WHO IS AN INSURED**

>\* \* \*

**2.** Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":

6

  **a.** You are an insured.

  **b.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured . . . .

    \*   \*   \*

  **c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

    \*   \*   \*

**SECTION IV – CONDITIONS**

    \*   \*   \*

**8.** **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

32. The Umbrella Policy defines "Auto" to mean "[a] land motor vehicle . . . ."

33. The Umbrella Policy defines "bodily injury" to mean:

[B]odily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury.

34. The Umbrella Policy defines "Covered auto" to mean "those 'autos' to which 'underlying insurance' applies."

35. The Umbrella Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

7

36. The Umbrella Policy defines "Retained limit" to mean "the available limits of 'underlying insurance' scheduled in the Declarations . . . ."

37. The Umbrella Policy defines "suit" to mean "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged."

38. The Umbrella Policy defines "Ultimate net loss" to mean "the total sum, after reduction for recoveries . . . collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments . . . ."

39. The Umbrella Policy defines "Underlying insurance" to include:

   a. any policies of insurance listed in the declarations under the Schedule of "underlying insurance"; and

   b. any other insurance available to the insured (whether primary, excess, excess umbrella, umbrella or contingent and irrespective of whether the insured elects to call upon such insurance to respond), but only when such other insurance provides the same type of coverage provided in the policies listed in the Schedule of "underlying insurance".

**Count I**
**(Declarations of EMC's Duties to Defend**
**LF Towing (and Childs)**

40. LF Towing incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-39.

41. The Pilgrim Policy qualifies as "underlying insurance" under the Umbrella Policy because it is "any other insurance available" to insureds (LF Towing and Childs) that "provides the same type of coverage" – *i.e.*, business auto coverage – "provided in the policies listed in the Schedule of 'underlying insurance.'"

42. The *Wrongful Death Actions* and the *Angari Action* present potential liability of insureds (LF Towing and Childs) in excess of the "retained limit" because of "bodily injury"

caused by an "occurrence" as contemplated by the insuring agreement of Coverage A of the Umbrella Policy.

43. The "Auto Coverages" exclusion of the Umbrella Policy is inapplicable because the tow truck involved in the accident is a "covered auto" under the Pilgrim Policy, again, which qualifies as "underlying insurance" as defined by the Umbrella Policy.

44. As such, upon Pilgrim's imminent termination of its duty to defend, EMC is obligated to assume the defense of LF Towing (and Childs) against the *Wrongful Death Actions* and the *Angari Action*, and LF Towing requests a declaration to that effect.

**Count II**
**(Declarations of EMC's Duties to Indemnify**
**LF Towing (and Childs))**

45. LF Towing incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-44.

46. The allegations of the *Wrongful Death Action* and the *Angari Action* potentially obligate EMC under the Umbrella Policy to indemnify LF Towing (and Childs) against same, and LF Towing requests a declaration to that effect.

**PRAYERS FOR RELIEF**

**WHEREFORE**, LF Towing respectfully request that this Court:

(a) Enter a judgment in LF Towing's favor on Counts I-II of its Complaint against EMC, and setting forth the declarations requested in each of those counts;

(b) Award LF Towing its reasonable attorneys' fees and costs; and

(c) Award LF Towing such other and additional relief as the Court may deem just and proper.

**LF Towing demands trial by jury on all issues so triable.**

                    Respectfully submitted,

                    Defendant,

                    LOWELL FLEET TOWING, INC.

                    By its attorneys,

                    */s/ Brian P. McDonough*
                    Brian P. McDonough, BBO No. 637999
                    bmcdonough@mcmlawfirm.com
                    Robert J. Maselek, Jr. (BBO No. 564690)
                    rmaselek@mcmlawfirm.com
                    **MCDONOUGH COHEN & MASELEK LLP**
                    53 State Street
                    Suite 500
                    Boston, MA 02109
                    Tel: 617-742-6520

                    ***Please Direct All Non-Electronic Correspondence to Our Administrative Address:***

                    McDonough Cohen & Maselek LLP
                    205A Willow Street, 1st Floor
                    South Hamilton, MA 01982

Dated: August 27, 2025